UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 1:17-MJ-497
)
ROBIN DOROTHY DUCORE, )
)
Defendant. )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Douglas M. Mohl, being duly sworn, depose and state:

1. I am currently employed as a Special Agent of the Federal Bureau of Investigation ("FBI"), and have been so employed for over nine years. Since May 2016, I have been assigned to the Washington Field Office of the FBI, where I investigate violations of federal law that occur within the airport environment and on board aircraft. I am familiar with the relevant federal statutes, including under Title 49 of the United States Code, and have conducted numerous investigations into offenses that have occurred upon aircraft.

2. This statement of probable cause is in support of a complaint against ROBIN DOROTHY DUCORE ("DUCORE") for a violation of Title 49, United States Code, Section 46504 (Interference With Flight Crew Members and Attendants).

3. Title 49, United States Code, Section 46504, states, in relevant part: "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both." Under Title 49, United States Code,

1

Section 46501(2), the " 'special aircraft jurisdiction of the United States' includes any of the following aircraft in flight: . . . [a non-United States government] aircraft in the United States [and] [a non-United States government] aircraft outside the United States . . . that has its scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States."

4. The facts set forth in this statement of probable cause are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This statement is intended to show that there is probable cause for the violation and does not purport to set forth all of my knowledge or investigation into this matter.

## PROBABLE CAUSE

5. The relevant incident occurred on or about July 29, 2017, on board Jetblue Flight 1528. Witness statements and the Jetblue flight manifest establish that the defendant, ROBIN DUCORE, was a passenger on that flight. Flight 1528 was scheduled to travel from the Dominican Republic to John F. Kennedy International Airport in New York ("JFK"). However, because of DUCORE's actions, the flight was diverted to Washington Dulles International Airport ("IAD"), which is located in the Eastern District of Virginia, landing at approximately 9:30 PM. As a result of the diversion, over one hundred other passengers on Flight 1528 were debarked and delayed.

6. I was contacted in the evening of July 29, 2017, shortly after the diverted flight landed, and opened an investigation into the reasons for the flight's diversion.

7. On August 3, 2017, I interviewed a witness flight attendant ("AE"). AE stated, among other things, the following:

    a. During the flight, DUCORE was seated in the rows for which AE was responsible.

b. During the first drink service, DUCORE ordered two glasses of white wine from AE. Shortly thereafter, DUCORE ordered two additional glasses of white wine, bringing her total consumption to four glasses of white wine in a period of approximately an hour and a half. AE then stopped serving DUCORE additional alcoholic beverages.

c. AE stayed close to DUCORE and observed her behavior deteriorate as she grew increasingly loud and began to curse.

d. AE then observed DUCORE begin to touch in a flirtatious manner the back of the head of the male passenger sitting next to her, an individual whom AE did not believe that DUCORE knew. AE recalled that the passenger being touched by DUCORE appeared uncomfortable with this unsolicited touching. After DUCORE was repeatedly told to stop touching this passenger, AE moved the male passenger to a different seat. DUCORE then became upset, and began cursing and became verbally abusive towards AE.

e. Eventually, another passenger ("YD"), who works as a medical doctor, approached AE and offered to sit next to DUCORE to calm her down. YD sat next to DUCORE and DUCORE appeared calm to AE for roughly five minutes. However, after that time, AE observed YD abruptly leave the seat next to DUCORE and return to her previous seat. AE recalled that YD told him something to the effect of: "I'm not sitting next to that psychotic." AE felt as if YD had been threatened in some way by DUCORE, though he was not sure.

f. In an attempt to help DUCORE become more sober, AE decided to provide some snacks and a bottle of water to DUCORE. DUCORE rejected the food and water, and threw them across the aircraft. AE did not recall whether the bottle of water was full or empty when DUCORE threw it. DUCORE then continued to make loud, aggressive, and profane statements.

g. At that point, AE, in consultation with the rest of the flight attendants, made a "safety-based value decision" and placed DUCORE in flexcuffs. DUCORE initially resisted, but then allowed herself to be cuffed. While restrained, DUCORE continued to curse and made statements to the effect of "I hate life." However, AE did not hear DUCORE make explicit threats.

h. After approximately five minutes of being restrained, DUCORE broke out of the flexcuffs. DUCORE Called AE a "fucking asshole" and she kicked him one time on his leg. AE clearly recalled that DUCORE's kick made contact with his body, but AE did not feel pain and was not injured by the kick.

i. Following DUCORE's escape from the flexcuffs and her kick, AE had a female flight attendant stay with DUCORE since this flight attendant appeared to have a better rapport with DUCORE. While the flight attendant sat with her, DUCORE's behavior fluctuated from being upset and cursing to being calm. AE did not think DUCORE was an imminent threat to the aircraft, but he felt DUCORE was a threat to other passengers based on her previous behavior and because he feared what DUCORE might do next.

j. Based on these concerns, the flight crew made the decision to divert the aircraft to Washington Dulles International Airport due to a Level II security threat to the aircraft. A Level II security threat involves physically abusive behavior, such as pushing, kicking, hitting, or inappropriate touching.

k. DUCORE passed out during the final 20 minutes of the flight, however the decision to divert had already been made and was underway, and the flight crew was committed to having DUCORE removed from the aircraft.

8. On August 8, 2017, I interviewed YD, the witness passenger referred to above. YD provided, among other things, the following:

a. YD is trained and employed as a medical doctor.

b. Upon entering the flight, YD observed a woman, later identified as DUCORE, who seemed anxious, angry, and pushy.

c. At the start of the flight, YD and her daughter were seated in the row in front of DUCORE.

d. Early in the flight, YD observed DUCORE order an alcoholic beverage and later heard her crying.

e. At some point thereafter, DUCORE began kicking the seat of YD's daughter. YD also observed DUCORE touching the passenger in the seat next to DUCORE in a manner that appeared to make that passenger uncomfortable. That passenger was eventually moved.

f. YD described DUCORE as being loud, disruptive, and cursing.

g. YD eventually changed seats and sat next to DUCORE in an attempt to calm DUCORE. DUCORE calmed down after YD introduced herself as a

medical doctor. DUCORE hugged YD and cried about what appeared to be a family matter.

 h. However, YD described that DUCORE's hugs started to get too tight and YD "thought she [DUCORE] would harm me." DUCORE grabbed YD's hand so hard it left a small scratch. At that point, YD decided to return to her seat. DUCORE then yelled, "you leave like everyone leaves," and cursed and kicked the chair in front of her. YD felt there was no reasoning with DUCORE. YD described DUCORE as acting "like a caged animal."

 i. During the flight, YD recalled that DUCORE threw an empty water bottle in the area of YD's daughter, however, YD's daughter was not hit.

 j. YD recalled that DUCORE made threats to the flight attendant and directed all her anger towards him. YD also recalled that DUCORE tried to kick the flight attendant, but did not observe whether the kick made contact.

 k. YD was afraid DUCORE would harm someone on the aircraft so YD remained standing to ensure the safety of her family. However, YD did not feel that DUCORE was a threat to the aircraft.

9. On August 11, 2017, I interviewed a witness off-duty flight attendant who was aboard Flight 1528 ("SK"). SK stated, among other things, the following:

 a. SK was seated two rows behind DUCORE. SK observed that DUCORE was crying, punching the chair in front of her, and telling other people to shut up and to stop looking at her.

b. When the flight attendant told DUCORE he was not going to serve her more alcohol, DUCORE became agitated and threw a plastic glass across the aisle.

c. During the flight, SK observed DUCORE's behavior continue to decline. DUCORE started cursing at other passengers and was kicking and "smashing" the seat in front of her. The flight attendants gave DUCORE numerous warnings to calm down and stop her inappropriate behavior.

d. When DUCORE's behavior continued to decline, the flight attendants decided to restrain DUCORE. "SK" assisted the flight attendants with the struggle of applying flexcuffs on DUCORE. During this process, DUCORE was telling people to go away and that "nobody loves her."

e. After 15-20 minutes, DUCORE was able to escape the flexcuffs. A female flight attendant then sat with DUCORE. DUCORE's behavior fluctuated from being calm to being extremely agitated.

f. SK's husband, who was sitting next to her, reported that at one point DUCORE sat on her seat facing backwards and yelled that everyone was going to die.

g. SK felt DUCORE interfered with the flight crew as the flight crew was unable to do anything else throughout the flight.

10. On August 8, 2017, Jetblue provided me with, among other things, a financial loss report of expenses incurred by Jetblue from having to divert Flight 1528 to IAD totaling $36,126.25, the largest portion of which was due to providing 144 passengers each with a $150.00 credit voucher.

## CONCLUSION

11. Based on the foregoing, I submit that there is probable cause to believe that on or about July 29, 2017, in the Eastern District of Virginia, the defendant, ROBIN DUCORE, on an aircraft in the special aircraft jurisdiction of the United States, namely Jetblue Flight 1528 (with aircraft registration number N579JB) flying from Puerto Plata in the Dominican Republic to New York City, New York, did knowingly interfere with the performance of the duties of a flight crew member or flight attendant of the aircraft, and lessen the ability of the member or attendant to perform those duties, by assaulting and intimidating the attendant or member, specifically by kicking the attendant or member; directing abusive and aggressive language toward the attendant or member; by engaging in inappropriate touching of other passengers, and by engaging in disruptive and hostile behavior toward flight crew members, flight attendants, and other passengers, among other acts.

Douglas M. Mohl
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me on the 7th day of November, 2017, in Alexandria, Virginia.

_____/s/_____
John F. Anderson
The Honorable John F. Anderson
United States Magistrate Judge
Eastern District of Virginia