IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:18-CR-68 (TSE) |
| | ) | |
| ROBIN DOROTHY DUCORE, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUR REPLY IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL PRODUCTION OF *BRADY* MATERIAL**

The Defendant's Reply in Further Support of Motion to Compel Production of *Brady* Material, has failed, like Defendant's initial motion and memorandum, to establish the existence of any *Brady* material, nor has the Defendant set forth any pertinent case law in support of her request. The Court should deny the Defendant's motion.

**Argument**

1. **Information is Not Unavailable Because it Would Require the Defendant to Expend Resources to Acquire it**

Despite the Defendant's attempt to undercut the plain rule set forth in *Wilson*, in the Fourth Circuit, it is an "established principle that when 'exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the *Brady* doctrine.'" *United States v. Jeffers,* 570 F.3d 557, 573 (4th Cir. 2009) (quoting *United States v. Wilson,* 901 F.2d 378, 381 (4th Cir. 1990)).

This principle is important to understand because, in arguing that the *Brothers Construction* court found no *Brady* violation because the statements were not exculpatory, Def.s' Reply at 2, the Defendant misses the essential point. Indeed, the very *first* reason the *Brothers Construction* court

1

identified with respect to why there was no *Brady* violation in that particular case is because "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources." The court went on to note with respect to this point that "[t]he defendants do not dispute the Government's assertion that the [evidence] was available through sources other than the Assistant United States Attorney." *Id.* (explaining that counsel "was able to obtain the information by making a FOIA request" on the West Virginia Department of Transportation). This explanation by the Fourth Circuit is important because the Defendant can make no credible assertion that the information is unavailable to her. Illustratively, in her Reply, the Defendant does not argue that the information she seeks to compel from the government is not available to her. Rather, the Defendant asserts the information is not "truly 'available'" to her because it would require her to expend resources to obtain the information. Def.'s Reply at 4. Of course, the Defendant concedes that she has not attempted to use compulsory process to obtain the information available to her directly from JetBlue because she believes, "JetBlue [is] unsympathetic to [her] situation." *Id.* at 3. The Defendant has not cited any case law that dictates evidence is "unavailable" if a defendant has to expend resources to obtain it or has to obtain it from an "unsympathetic" source.

Next, after first determining there could be no *Brady* violation because the information was available via another source, the Fourth Circuit went on to note that, even if the information were not otherwise available to the defendant from another source, it *still* would not be a *Brady* violation because the information was simply not exculpatory. 219 F.3d at 316 ("we have not been informed as to how the [evidence is] exculpatory … we have only been advised, in the broadest terms, that there are notes … that 'differ' from a summary of the interview given by a government witness at trial."). This latter point by the Fourth Circuit that referenced that the notes were not exculpatory

2

simply because they "differed" from an interview summary is an important point that will be discussed in more detail in the following section.

The Defendant has still failed to adequately explain why, since January, she has failed to use compulsory process to obtain the information she seeks. The Defendant is not entitled to sit on her hands and then attempt to compel the government to provide her with information that she is not, in the first place, entitled to but that is also available to her via the exercise of due diligence.

2. **The Defendant *Still* Has Not Identified Any *Brady* Material**

The Defendant begins her quest to identify what she alleges is *Brady* by making a wild and patently unsupported claim that the FBI agent responsible for investigating this case is in cahoots with the lead flight attendant to only identify and interview witnesses that will falsely accuse the Defendant. Def.'s Reply at 4. In reality, this is simply not true. Three of the passengers interviewed by the government were the very same three passengers who provided written statements to local law enforcement almost immediately after the flight de-boarded. In spite of her wild assertion, this is a fact the Defendant is well aware because those written statements and the individuals' identities were previously provided to the Defendant. An additional passenger, who was seated next to the Defendant during part of the flight, was also interviewed – *because he was seated next to the Defendant during part of the flight*. The other passenger interviewed was the husband of one of the three passengers who submitted a written statement to local law enforcement immediately after de-boarding because this passenger explained her husband was also on the flight and heard the Defendant make a threat on the plane. A fact the Defendant is also aware because it was explained in two 302 reports previously provided to the Defendant.

The Defendant next claims that it is *Brady* that she "knows … that there were passengers who the flight attendant insisted be re-seated despite their expressed desire not to be moved." *Id.* As the government already thoroughly explained in its Response, Dkt. No. 33 at 12-15, this is decidedly not *Brady* and only refers to two passengers whose names and statements have previously been disclosed to the Defendant in any event. Furthermore, besides these two passengers, whose names and statements the Defendant already has, there are no other "similarly situated passengers…" as the Defendant claims. Def.'s Reply at 4; *see also id.* at 5 ("the Defendant already knows that other witnesses can impeach the present witnesses."),

The Defendant next spends three pages, essentially, arguing that if an individual is crying they are suffering from a mental health *emergency*. Def.'s Reply at 5-7. Suffice it to say, if crying and/or talking to yourself is now a mental health emergency, we will need a mental health institution on every corner of every block. Regardless of whether the Defendant was crying, "possibly suffering from a psychosis," Def.'s Reply at 5, talking to herself, was "distraught," or was exhibiting any other signs of a "mental health emergency," such evidence is simply not admissible to negate the *mens rea* of a general intent crime. *See, e.g., United States v. Jackson*, 8 F.Supp.2d 1239, 1241 (D. Colo. 1998) (explaining that evidence of diminished mental capacity is only admissible to negate the *mens rea* of a specific intent crime, not a general intent crime); *and United States v. Brown*, 326 F.3d 1143, 1147 n. 2 (10th Cir. 2003) ("The use of psychological or psychiatric evidence to negate an element of the government's case is limited to offenses requiring proof of specific intent."). As such, even if the Defendant's allegations are true – which they are not – it would decidedly not be *Brady*.

4

Finally, the Defendant claims that it is exculpatory that two passengers who observed the Defendant kicking the lead flight attendant were unsure of whether the kicks made contact with the lead flight attendant or not. Besides the fact that two flight attendants, specifically, recall and stated that the Defendant's kick made contact with the lead flight attendant, this argument completely misses the mark with respect to *Brady*. Specifically, the Defendant has been provided the names and statements of the passengers who observed the kick, as well as the names and statements of passengers who do not observe the kick. Thus, the government has satisfied its *Brady* obligations in this respect. The Defendant's argument also misses the point because it fails to acknowledge what is plainly evident – in a plane where views can be and are obstructed by any number of things, including other passengers, seats, standing flight attendants, etc. – not every single witness will see every single thing or see the exact same thing.

Having failed to identify any *Brady* material, the Defendant claims that she should still be entitled to the names and contact information of all the passengers in the first six rows because of the "ordinary, reasonable person in fear" standard set forth in *Gilady*. *Id.* at 4-5. However, *Gilady* does not hold or assert that this standard applies to all or even any passengers. Indeed, in *United states v. Gilady*, the Fourth Circuit specifically discussed the evidence adduced at trial and in affirming the defendant's conviction stated, "both [flight attendants] testified that Gilady's behavior … was intimidating and that they were scared that there would be a physical altercation." 62 Fed. Appx. 481, 484. The Fourth Circuit went on to state that, given the testimony of the *flight attendants* that they were frightened and the context of 9/11, "there is sufficient evidence in the record to support a finding that a reasonable person would have been placed in fear by Gilady's conduct during the Delta flight." *Id.* The *Gilady* court plainly relied

5

on the testimony of the flight attendants to establish and set forth its reasonable person standard. *Id.* Notably, while discussing why the evidence was sufficient to convict Gilady, the Fourth Circuit quite specifically did not reference the corroborating testimony it previously discussed from the trial that was provided by an off-duty police officer who took a seat next to Gilady during the flight to calm him down. *Id.* 482-483. This was not an accident by the *Gilady* court but, rather, is a reflection that the pertinent inquiry regarding intimidation "focuses on how a flight attendant is affected, or influenced by, a defendant's conduct." *United States v. Turner*, 2017 WL 3431587 at *3 (D. Hawaii, Aug. 8, 2017).

However, even assuming *arguendo* that the Defendant's interpretation of *Gilady* is correct, the other passenger who testified in *Gilady* was an *off-duty police officer* who took the responsibility to sit by the defendant during the flight for safety reasons – not any and every random passenger on the flight. *Gilady*, 62 Fed. Appx. at 482. Here, the government has interviewed the three individuals who sat next to the defendant on the flight and provided the Defendant with their statements and identities. Thus, even under her own interpretation of *Gilady*, the Defendant has already received all the information to which she is entitled.

### 3. Defendant is Wrong as a Matter of Law Concerning *Elonis*

Despite a second bite at the apple and six pages in her Reply dedicated to the issue, the Defendant has still failed to identify a single post-*Elonis* case that supports her position that 49 U.S.C. § 46504 is now a specific-intent crime. Def.'s Reply at 8-13. The reason for that is simple: every case to consider the effect of *Elonis* on § 46504 has concluded that § 46504 remains a crime of general intent.

The mental state required to prove a violation of 18 U.S.C. § 875(c) is simply not before the Court and, despite the Defendant's protestations to the contrary, the *Elonis* decision was limited to § 875(c) because in a § 875(c) threats case "the crucial element separating legal innocence from wrongful conduct is the threatening nature of the communication…." *United States v. Elonis*, 135 S. Ct. 2001, 2003 (2015).

It is elementary, from a plain reading of § 46504, that the threatening nature of a communication is not at all crucial to a determination of whether an individual has violated the statute. Specifically, unlike in a § 875(c) prosecution post-*Elonis*, even if the Defendant did not intend any action or communication on her part to be intimidating, so long as it was intimidating to a flight attendant standing in the shoes of an ordinary reasonable person, the Defendant would be in violation of the statute. This is because the purpose of § 46504 is completely different from the purpose of § 875(c):

> [T]he goal which Congress sought in this provision of the statute was to deter the commission of crimes which, if committed on the terrain below, might be considered relatively minor, but when perpetrated on an aircraft in flight would endanger the lives of many. The primary danger to be averted is not the formation of a specific intent to interfere with aircraft operations but the criminal act of an assault [or] intimidation ... upon airline personnel during flight. We therefore construe [§ 46504's predecessor statute] as a general intent crime, in harmony with the statutory purpose of safeguarding flight personnel from any statutorily described acts which would interfere with their efficient functioning.

*United States v. Lynch*, 881 F.3d 812, 816 (10th Cir. 2018) (quoting *United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975).

7

**CONCLUSION**

For the foregoing reasons, the Defendant's motion to compel should be denied.

                Respectfully submitted,

                Tracy Doherty-McCormick
                Acting United States Attorney


By: /s/ Nicholas U. Murphy II
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2018, I filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically generated a Notice of Electronic Filing ("NEF") to the following counsel of record:

    Nina J. Ginsberg
    DiMuroGinsberg PC
    1101 King Street, Suite 610
    Alexandria, Virginia 22314-2956
    Phone: (703) 684-4333
    Fax: (703) 548-3181
    Email: nginsberg@dimuro.com

    By: /s/ Nicholas U. Murphy II
    Assistant United States Attorney
    Attorney for the United States
    Office of the United States Attorney
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    Phone: (703) 299-3700
    nicholas.murphy@usdoj.gov