UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Criminal No. 1:18-CR-68 |
| ROBIN DOROTHY DUCORE, | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

The United States and the defendant, ROBIN DOROTHY DUCORE, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. On or about July 29, 2017, the defendant, ROBIN DOROTHY DUCORE, boarded JetBlue Flight 1528, which was scheduled to fly from Puerto Plata in the Dominican Republic to John F. Kennedy Airport in New York. As a result of the actions of DUCORE, the flight was diverted to Washington Dulles International Airport, which is located in the Eastern District of Virginia. The events described below all took place on an aircraft within the special aircraft jurisdiction of the United States.

2. DUCORE was seated in the front of the plane in seat 3A, next to the window. After the doors to the airplane were closed, a passenger seated nearby noticed that DUCORE was crying and appeared agitated and upset.

3. During the flight, DUCORE consumed three or four glasses of white wine. During this time, DUCORE began to touch the male passenger seated next to her on the arm and on the head, which appeared to the lead flight attendant to make the passenger uncomfortable. The lead flight attendant instructed DUCORE to stop touching the male passenger, but

DUCORE repeatedly ignored his instructions, so the flight attendant eventually moved the passenger to another seat. This caused DUCORE to become upset and she began loudly cursing at the flight attendant.

4. DUCORE then requested another glass of wine, but the flight attendant refused to provide DUCORE with additional alcohol, which angered DUCORE, and she began loudly cursing at the flight attendant.

5. A female passenger who works as a medical doctor offered to sit next to DUCORE to calm her down. DUCORE initially calmed down, but then DUCORE proceeded to hug the doctor very tightly and to squeeze her hand uncomfortably. The doctor was uncomfortable by DUCORE's behavior and eventually moved back to her original seat, which was in the row directly in front of DUCORE'S row. DUCORE then kicked the chair in front of her, in which the doctor's daughter was seated.

6. Believing DUCORE was intoxicated, a flight attendant provided DUCORE with snacks and a bottle of water. DUCORE threw the water bottle into another row, then later threw the snacks, while continuing to make loud, profane, and aggressive statements.

7. Faced with DUCORE'S escalating and deteriorating behavior, the flight crew determined that, for everyone's safety, the defendant needed to be physically restrained with flex cuffs. DUCORE initially resisted, but with the assistance of two flight attendants and a passenger, she eventually was cuffed.

8. After approximately five minutes, during which DUCORE struggled and cursed loudly, DUCORE managed to get out of the flexcuffs. After getting out of the flexcuffs DUCORE turned towards the back of the plane and yelled a statement about dying.

9. The lead flight attendant again tried to calm DUCORE, but DUCORE began

kicking at the flight attendant, striking him once in his leg.

10. Following DUCORE getting out of the flexcuffs, her kicking the lead flight attendant in the leg, her unpredictable behavior, and their concern for what could happen next, the flight crew recommended the aircraft be diverted from its scheduled landing place in New York, to Washington Dulles International Airport, due to a Level II disturbance on the aircraft. A Level II disturbance involves physically abusive behavior, such as pushing, kicking, hitting, or inappropriate touching. During the flight, DUCORE had knowingly and repeatedly interfered with the performance of the duties of the flight attendants, and had lessened their ability to perform their duties by assaulting and intimidating the flight attendant, kicking a flight attendant, and directing abusive language towards the flight attendants.

11. The flight was diverted to Washington Dulles. As a result, the passengers aboard the flight did not arrive at JFK until approximately four hours past their scheduled arrival time.

12. As a result of DUCORE's actions, JetBlue incurred costs of $36,126.45, which include delay costs, landing fees, gate usage fees, ground operations fees, and $150.00 credit vouchers for each of the 144 other passengers aboard the flight.

13. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or the United States and is not intended to be a full enumeration of the all of the facts surrounding the defendant's case.

14. This statement of facts shall be admissible as a knowing and voluntary confession in any proceeding against DUCORE regardless of whether the plea agreement is presented to or accepted by a court. Moreover, DUCORE waives any rights that she may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule

in objecting to the admissibility of the statement of facts in any such proceeding.

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney

By: /s/ Nicholas U. Murphy
Nicholas U. Murphy
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, ROBIN DOROTHY DUCORE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 5/11/18

ROBIN DOROTHY DUCORE
Defendant

I am Nina Ginsberg, the defendant's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Date: 5/11/18

Nina Ginsberg, Esq.
Attorney for Defendant