**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:18-CR-68 |
| v. | ) | |
| | ) | Hon. T.S. Ellis III |
| ROBIN DOROTHY DUCORE, | ) | |
| | ) | Sentencing:  August 17, 2018 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, Guidelines Manual ("Guidelines"), hereby submits this position paper with respect to the sentencing of the defendant, Robin Dorothy Ducore. The United States has reviewed the Presentence Investigation Report (PSR) and agrees with the findings of the Probation Office. For the reasons set forth below, the government respectfully recommends a sentence of 3 months home confinement, drug and alcohol testing and treatment, three years of supervised release, and that the Court enter a restitution Order for $36,126.25 to reimburse the victim, JetBlue Airways, for expenses incurred as a result of defendant's crime.

**BACKGROUND AND PROCEDURAL HISTORY**

On July 29, 2017, the defendant was a passenger on a JetBlue flight inbound for New York City from the Dominican Republic. Following takeoff, the defendant consumed some alcoholic beverages and, when it became apparent to the flight crew that the Defendant was intoxicated, the flight crew attempted to try to sober her up. The lead flight attendant told the defendant that she could not have any more alcohol on the flight, to which the defendant responded by becoming verbally abusive towards the lead flight attendant, including swearing at him out and telling him

1

no one wanted him there. Unable to control the defendant's abusive behavior, a female flight attendant attempted to reason with the defendant woman to woman and let the defendant know that she would be there to provide the defendant with whatever assistance the defendant might need. The female flight attendant showed the defendant the call button and let the defendant know she could contact her if the defendant needed anything. The defendant responded to the overture by telling the flight attendant to go away.

When the flight attendants next offered the defendant a variety of snacks and water, the defendant responded by throwing the snacks across the cabin and by throwing a full bottle of water into the aisle in front of her – where a young girl was seated with her mother and elderly grandmother. The flight attendants explained to the defendant that throwing things about the cabin was dangerous to other passengers and asked the defendant to stop throwing things. The Defendant responded to these instructions by promptly throwing more snacks throughout the cabin.

This was not the first time during the flight that the defendant completely disregarded the instructions of the flight crew. On three prior occasions, the defendant inappropriately touched and caressed the back of the head of a male passenger seated next to her and clutched his arm. On each occasion, the lead flight attendant asked the defendant not to touch other passengers like that. After the third time of failing to heed the lead flight attendant's instructions and sensing discomfort from the passenger that was being touched, the lead flight attendant moved the passenger to a new seat. The defendant responded to this by lashing out at the lead flight attendant, cursing him and telling him that no one wanted him there.

The flight attendants decided to remove the remaining passenger seated in the defendant's row so that the female flight attendant could have direct access to the defendant in order to be able to more closely monitor the Defendant's behavior and protect the safety of the other passengers.

While the female flight attendant was staged next to the defendant, she had to repeatedly try to keep the defendant from getting out of her seat by physically restraining her.

Given the difficulty the flight attendants were having in their efforts to control the defendant's behavior, other passengers admirably tried to assist. A passenger seated directly in front of the defendant took it upon herself to try to calm the defendant down and volunteered to sit next to her. However, this passenger quickly concluded that there was no reasoning with the defendant because she was acting like a caged animal and quickly returned to her seat. By that point, the defendant's behavior had become so unpredictable that everyone on the plane was watching out for the defendant's next move, as no one knew what to expect from the defendant's actions.

The flight crew determined that they needed to put the defendant in flex cuffs after she had: repeatedly disregarded flight attendant instructions to stop inappropriately touching another passenger; disregarded flight attendant instructions to stop throwing snacks and a bottle of water throughout the cabin; repeatedly cursed out and verbally abused flight attendants and other passengers; and been held down in her seat by a flight attendant. The Defendant was not compliant with the flight crew's efforts to put flex cuffs on her. Instead, the defendant physically resisted these efforts and it took two flight attendants and a passenger helping to get the defendant into the flex cuffs. After a few short minutes, the defendant managed to get out of the flex cuffs and began again aggressively cursing at the lead flight attendant and demanding that they get her out of there. Then, the defendant proceeded to kick the lead flight attendant in the leg.

After getting out of the flex cuffs and physical assaulting a member of the flight crew, the flight crew had no choice but to divert the plane to protect the safety of the flight crew and

passengers. The captain of the flight declared a Level 2 emergency and coordinated with air traffic control to divert the plane to Dulles in order to get the defendant off the plane as soon as possible.

The defendant's actions caused two of the three flight attendants on the plane to focus almost all of their attention and energy, for last ninety minutes of the flight, on the defendant to the neglect of the other passengers on the plane they were responsible for and in neglect towards their other duties on the plane.

As a result of the defendant's actions, on May 11, 2018, the defendant entered into a plea agreement to a single-count Indictment charging her with Interference with Flight Crew Members, in violation of 49 U.S.C. § 46504.

## ARGUMENT

### I. Sentencing Law

In addition to properly calculating the applicable Guidelines range, this Court is also required to consider the sentencing factors set forth in 18 U.S.C. § 3353(a). In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, emphasizing that a sentencing court must not only consider the Guidelines, but also the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90.

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should first calculate the Sentencing Guidelines range, then permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the Section 3553(a) factors, and finally pronounce a sentence based

on the relevant factors. *Id.* at 49-50. Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." Ultimately, the sentence imposed by the court must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61.

II. **A Sentence of 3 Months Home Confinement Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).**

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the characteristics of the defendant, the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A) – (C). The sentencing court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

a. <u>Nature and Circumstances of the Offense</u>

Applying these sentencing factors to the facts of this case demonstrates that a sentence of 3 months home confinement is appropriate and reasonable.

Aircraft traveling tens of thousands of feet in the air at hundreds of miles per hour, carrying the lives of up to hundreds of people are inherently in a dangerous position. Thus, the whole purpose of the statute the defendant now stands convicted is to protect the safety of airline passengers and crew so that airplanes can travel as safely as possible from one place to another. It is easy to understand why Congress created this law because on an airplane any little disruption or disturbance to the aircraft can place the entire aircraft in imminent and catastrophic danger. It is for this reason that is crucially important that passengers not interfere with the

duties of the flight crew by assault and intimidation. This was a serious crime and the punishment imposed by the Court should reflect the serious nature of the offense.

    b. History and Characteristics of the Defendant

The defendant does not have a significant or lengthy criminal history. However, her history of alcohol abuse is long and played a contributory role in the defendant's conduct here and in prior physically abusive conduct by the defendant. The government believes that it is critically important to protect the safety of the larger community around her, that the defendant continue to address and abstain from alcohol abuse. Thus, based on the defendant's prior history of alcohol abuse and the resultant conduct, a sentence of 3 months home confinement and continued drug and alcohol testing and treatment is appropriate and reasonable.

**III. Restitution**

As part of his plea agreement in this case, the defendant agreed to the entry of a restitution order for the full amount of his victims' losses. PSR ¶ 11. JetBlue Airways has submitted a declaration of losses and supporting documentation to the probation office for restitution in the amount of $36,126.25. PSR ¶ 30. The government submits that this amount reasonably represents the costs associated with JetBlue's diversion of the flight the defendant interfered with on July 29, 2017. Therefore, the defendant should be ordered to pay this amount in restitution.

**CONCLUSION**

For the above-stated reasons, the United States submits that a sentence of 3 months home confinement, drug and alcohol testing and treatment and three years' supervised release is reasonable and accounts for each of the factors set forth in 18 U.S.C. § 3553(a). As such, the United States respectfully recommends that the Court impose a sentence of 3 months incarceration and requests that the Court enter a restitution Order for $36,126.25 to reimburse the victim, JetBlue Airways, for diversion related expenses.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: __/s/ Nicholas Murphy_____
Nicholas U. Murphy
Assistant United States Attorney
United States Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3729
Fax: (703) 299-3981
Nicholas.murphy@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on August 9, 2018, I filed the foregoing document with the Clerk of Court using the CM/ECF system, which will cause a true and accurate copy of this document to be transmitted to counsel of record.

In addition, I certify that on August 9, 2018, I emailed a copy of the foregoing to the U.S. Probation Officer assigned to this matter:

> Terrell C. Sewell, Jr.
> United States Probation Officer - Alexandria Division
> Eastern District of Virginia
> Phone: (703) 366-2122
> Email: terrell_sewell@vaep.uscourts.gov

>                    /s/ Nicholas Murphy
> Nicholas Murphy
> Assistant United States Attorney
> United States Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> Phone: (703) 299-3729
> Nicholas.murphy@usdoj.gov